**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SCOTT D. ANTONSON, | : | |
|     Plaintiff | : | |
| | : | No. 1:21-cv-00462 |
|     v. | : | |
| | : | (Judge Kane) |
| BRIAN CLARK, et al., | : | |
|     Defendants | : | |

**MEMORANDUM**

On March 15, 2021, pro se Plaintiff Scott D. Antonson ("Plaintiff"), who is presently

incarcerated at the Dauphin County Prison ("DCP") in Harrisburg, Pennsylvania, initiated the

above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants

Brian Clark ("Clark"), Lt. Manny Rose ("Rose"), Sgt. Doe ("Doe"), Officer Burkins ("Burkins"),

Officer Nask ("Nask"), Dr. Doug Doe ("Dr. Doe"), Dr. William Young ("Young"), Jill Cuffaro

("Cuffaro"), Officer Danner ("Danner"), Capt. Neidigh ("Neidigh"), Michael Pries ("Pries"),

DCP Board Members, and "employees of both DCP and Primecare Medical." (Doc. No. 1.)

Plaintiff has also filed a motion for leave to proceed in forma pauperis. (Doc. No. 5.) Pursuant

to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] the Court will perform its mandatory

screening of Plaintiff's complaint. For the reasons set forth below, the Court will grant

Plaintiff's motion for leave to proceed in forma pauperis and partially dismiss his complaint with

leave to amend.

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

## I.    BACKGROUND

In his complaint, Plaintiff asserts that Defendant Clark and DCP's directors and supervisors "continually allow, foster, and even cover up abuse."  (Doc. No. 1 at 2.)  Plaintiff claims that he was beaten by Defendant Danner in October 2017 and was told by Defendant Neidigh that it was being investigated.  (Id.)  Plaintiff avers that on December 6, 2019, Defendant Doe repeatedly slammed his head into a wall and broke his right hand because Plaintiff's arms "wouldn't go behind [his] back due to excessive trauma."  (Id. at 3.)  Plaintiff claims that Defendant Rose witnessed this abuse.  (Id.)  He avers that he was denied medical treatment after this incident.  (Id. at 6.)  Specifically, Plaintiff claims that he did not receive X-rays, dentures, bottom bunk status, and pain medication.  (Id.)

Plaintiff further alleges that he is "continually brought face to face with [his] abusers who continue to assault and batter" him.  (Id.)  He asserts that his request slips are "constantly detoured or destroyed," and that the grievance system "is a joke."  (Id.)  Plaintiff states that his "mail is waylaid" and that he is denied due process.  (Id.)  He avers that he has been denied copies or help from the legal department, and that officers have gone through his legal work to "take anything not mailed in or photocopied repeatedly."  (Id.)  Based on the foregoing, the Court construes Plaintiff's complaint as alleging violations of his First, Eighth, and Fourteenth Amendment rights.  Plaintiff seeks compensatory and punitive damages as relief.  (Id. at 7.)

## II.   LEGAL STANDARD

### A.    Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon

which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1).

District courts have a similar screening obligation with respect to actions filed by prisoners

proceeding in forma pauperis and prisoners challenging prison conditions.  See id.

§ 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines

that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42

U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss

any action brought with respect to prison conditions under section 1983 of this title . . . by a

prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that

the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the

standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-01757, 2017 WL 3016165, at *3 (M.D.

Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim

under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a

complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v.

Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint

pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal

Rule of Civil Procedure 12(b)(6)").  To avoid dismissal under Rule 12(b)(6), a civil complaint

must set out "sufficient factual matter" to show that its claims are facially plausible.  See

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d

Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is

liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

3

'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

### B.    Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III.    DISCUSSION

### A.    Plaintiff's Complaint

#### 1.    Claims Against Defendants Burkins, Nask, Dr. Doe, Young, Cuffaro, Pries, DCP Board Members, and "Employees of both DCP and Primecare Medical"

As an initial matter, Plaintiff has failed to state a claim for relief against Defendants Burkins, Nask, Dr. Doe, Young, Cuffaro, Pries, DCP Board Members, and "employees of both DCP and Primecare Medical."  Plaintiff named these Defendants in the caption, but there are no averments related to them in the body of the complaint.  Thus, Plaintiff's complaint is subject to dismissal without prejudice against these Defendants for that reason alone.  See Robinson v. Wheary, No. 1:16-cv-2222, 2017 WL 2152365, at *1-2 (M.D. Pa. May 17, 2017) (dismissing the inmate-plaintiff's complaint pursuant to the screening provisions of 28 U.S.C. § 1915(e)(2) where "the caption of the complaint names numerous individual defendants, [but] contains no

well-pleaded factual averments relating to these specific defendants in the body of the complaint"). Likewise, Plaintiff's collective use of both "DCP Board Members" and "employees of both DCP and Primecare Medical" is insufficient to plead how named Defendants were personally involved in the alleged violations of his constitutional rights. See Lawal v McDonald, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff); Hudson v. City of McKeesport, 244 F. App'x 519, 522 (3d Cir. 2007) (affirming the dismissal of one defendant because the complaint did not provide any basis for a claim against him).

**2.    Claims Against Defendant Clark**

It also appears that Plaintiff seeks to proceed against Defendant Clark based upon his respective supervisory position at DCP. Supervisors, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." See Iqbal, 556 U.S. at 676. The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to § 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'" See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3)

6

the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."

See Merring v. City of Carbondale, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing Sample v.

Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).  In the instant case, Plaintiff's complaint fails to set

forth plausible supervisory liability claims against Defendant Clark.  He has pled no facts

suggesting that Defendant Clark participated or acquiesced in the alleged violation of his rights,

and he has not identified any policy that allegedly caused the violation of his rights.  See

McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009).

### 3.      First Amendment Claims

#### a.      Access to the Courts

Plaintiff appears to suggest that his First Amendment right to access the courts was

violated when officers went through his legal work and took "anything not mailed in or

photocopied repeatedly."  (Doc. No. 1 at 6.)  He also suggests that he has been "denied any more

copies or help from the legal [department]."  (Id.)  It is well-settled that "prisoners have a

constitutional right of access to the courts."  See Bounds v. Smith, 430 U.S. 817, 821 (1977).  "In

order to state a claim of the denial of access to the courts, a prisoner such as [Plaintiff] must

allege that his efforts to pursue a legal claim were hindered and he suffered an actual injury."

Ross v. Clerk of Courts of Court of Common Pleas of Phila., 726 F. App'x 864, 865 (3d Cir.

2018) (citing Lewis v. Casey, 518 U.S. 343, 351 (1996)).  "[P]risoners may only proceed on

access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences

and conditions of confinement."  Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008).  A

complaint raising an access to the courts claim "must describe the underlying claim well enough

to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"  See

Christopher v. Harbury, 536 U.S. 403, 416-18 (2002).

7

Plaintiff's complaint, as pled, fails to set forth a plausible access to the courts claim. As an initial matter, Plaintiff fails to identify the officers who he alleges took his legal work. Moreover, Plaintiff fails to describe the claims he wished to raise that were set forth in the documents that were confiscated. See Heath v. Link, 787 F. App'x 133, 136 (3d Cir. 2019) (concluding same regarding legal materials). Moreover, Plaintiff has not alleged any facts about the merits of his underlying claims, let alone allege that he suffered an actual injury. See Presbury v. Wetzel, 789 F. App'x 294, 295 (3d Cir. 2020) (concluding same). Accordingly, Plaintiff's access to the courts claim is subject to dismissal.

### b.   Mail Issues

Next, Plaintiff asserts that his "mail is waylaid." (Doc. No. 1 at 6.) The Third Circuit has explained that prisoners "do not forfeit their First Amendment right to use of the mails." See Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995), abrogated in part on other grounds by Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997). However, "a single, isolated interference with [an inmate's] personal mail [is] insufficient to constitute a First Amendment violation." See Nixon v. Sec'y Pa. Dep't of Corr., 501 F. App'x 176, 178 (3d Cir. 2012). Moreover, a prisoner's non-legal outgoing mail can generally be opened and read outside of the inmate's presence without violating his constitutional rights. See Booze v. Wetzel, No. 1:13-cv-2139, 2016 WL 4191041, at *5 (M.D. Pa. Apr. 5, 2016), report and recommendation adopted by 2016 WL 4158771 (M.D. Pa. Aug. 5, 2016). However, "[a] state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech." See Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006). At this time, Plaintiff has failed to set forth a plausible First Amendment claim regarding his mail. Plaintiff fails to identify the officers who allegedly mishandled his mail. Moreover, Plaintiff fails to set forth facts suggesting a

pattern and practice of interference with his legal mail.  Plaintiff's First Amendment claim regarding his mail, therefore, will be dismissed.

### c.    Grievance System

Plaintiff vaguely suggests that his rights have been violated because his request slips are "constantly detoured or destroyed" and because the "grievance system is a joke."  (Doc. No. 1 at 6.)  Inmates, however, do not have a constitutional right to a grievance procedure.  See Hemingway v. Gosa, 1:19-cv-583, 2019 WL 3857856, at *5 (M.D. Pa. Aug. 16, 2019). Moreover, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance do not establish the involvement of officials and administrators in any underlying constitutional deprivation.  See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) (finding that "[t]he District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) (stating that "contentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit.").  Plaintiff's claim concerning denial of the grievance system is, therefore, subject to dismissal.

4.      **Eighth and Fourteenth Amendment Claims**

a.      **Excessive Force and Failure to Intervene**

Plaintiff's complaint does not clarify whether he was a pretrial detainee or a convicted prisoner during the relevant time period.  The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment," see Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)), whereas the Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where a[] [convicted] inmate challenges a prison official's use of force as excessive and unjustified."  See Brooks v. Kyler, 204 F.3d 102, 105 (3d Cir. 2000).  To demonstrate a due process violation, a detainee must allege that "the force purposely or knowingly used against him was objectively unreasonable," meaning that "the actions [were] 'not rationally related to a legitimate nonpunitive governmental purpose.'"  See Kingsley, 135 S. Ct. at 2473 (quoting Bell v. Wolfish, 441 U.S. 520, 561 (1979)).  Courts consider the following factors to determine whether an officer used "objectively unreasonable" force:

> (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting.

Robinson v. Danberg, 673 F. App'x 205, 209 (3d Cir. 2016) (quoting Kingsley, 135 S. Ct. at 2473).  The standard governing the Court's inquiry as to whether a plaintiff has a viable Eighth Amendment excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  See Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (quoting Whitley v. Albers, 475

U.S. 312, 319 (1986)).  In making this determination, courts are tasked with evaluating the following factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 321).

Moreover, corrections officers have "a duty to take reasonable steps to protect a victim from another officer's use of excessive force."  See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (internal quotations omitted).  When a detainee claims that an officer failed to protect him from another officer's use of excessive force, the detainee must prove that: (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene.  See id. at 650-51.  Officers, however, are "only liable if there is a realistic and reasonable opportunity to intervene."  See id. at 651.  While "legally distinct, the fate of [a] plaintiff's failure to intervene claim is closely linked to that of [an] excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene."  See Abdullahi v. City of Madison, 423 F.3d 763, 767-68 (7th Cir. 2005).

In his complaint, Plaintiff alleges that Defendant Danner beat him in October of 2017. (Doc. No. 1 at 2.)  He avers that Defendant Neidigh told him that the use of force was being investigated.  (Id.)  While Plaintiff has set forth a plausible excessive force claim against Defendant Danner, nothing in the complaint suggests that Defendant Neidigh was present during the use of force and failed to intervene to stop it.  Accordingly, any Eighth and Fourteenth Amendment claims against Defendant Neidigh will be dismissed.  Plaintiff also avers that Defendant Doe beat him on December 6, 2019, and that Defendant Rose witnessed the use of

force and did nothing to stop it.  (Id. at 3.)  At this stage, the Court concludes that Plaintiff has

set forth plausible excessive force and failure to intervene claims against Defendants Doe and

Rose as well.

<b>b.      Inadequate Medical Care</b>

As noted <u>supra</u>, Plaintiff's complaint does not clarify whether he was a pretrial detainee

or a convicted prisoner during the relevant time period.  Pretrial detainees' claims of inadequate

medical care arise under the Fourteenth Amendment, rather than the Eighth Amendment.  <u>See</u>

<u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 581 (3d Cir. 2003).  The Supreme Court,

however, has held that the Fourteenth Amendment affords pretrial detainees protections that are

"at least as great" as those afforded to convicted prisoners under the Eighth Amendment.  <u>See</u> <u>id.</u>

(quoting <u>City of Revere v. Mass. Gen. Hosp.</u>, 463 U.S. 239, 244 (1983)).  In the context of

claims for inadequate medical care, the Third Circuit has "found no reason to apply a different

standard than that set forth in <u>Estelle [v. Gamble</u>, 429 U.S. 97 (1976)] (pertaining to prisoners'

claims of inadequate medical care under the Eighth Amendment) when evaluating whether a

claim for inadequate medical care by a pretrial detainee is sufficient under the Fourteenth

Amendment."  <u>See</u> <u>id.</u>  Accordingly, the Court will analyze Plaintiff's claim under the

framework of the Eighth Amendment.  <u>See</u> <u>id.</u> at 582.

In the context of medical care, the Eighth Amendment "requires prison officials to

provide basic medical treatment to those whom it has incarcerated."  <u>See</u> <u>Rouse v. Plantier</u>, 182

F.3d 192, 197 (3d Cir. 1999).  To establish an Eighth Amendment claim based on a prison's

denial of medical care, an inmate must allege acts or omissions by prison officials that were

sufficiently harmful to evidence deliberate indifference to a serious medical need.  <u>See</u> <u>Spruill v.</u>

<u>Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004); <u>Natale</u>, 318 F.3d at 582.  The relevant inquiry is

12

whether the defendant (1) was subjectively deliberately indifferent to (2) the plaintiff's objectively serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994); Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety."  See Farmer, 511 U.S. at 837.  Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it.  See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842).  The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.  See Rouse, 182 F.3d at 197.

Because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation.  See White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment[,] his behavior will not violate a prisoner's constitutional rights.").  If there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second-guess the medical judgment of the attending physician.  See Caldwell v. Luzerne Cty. Corr. Facility Mgmt. Emp., 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) ("Courts will not second guess whether a particular course of treatment is adequate or proper."); Little v.

Lycoming Cty., 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996).

Therefore, a mere difference of opinion between the prison's medical staff and the inmate

regarding the diagnosis or treatment that the inmate receives does not support a claim of

deliberate indifference.  See Pearson, 850 F.3d at 535; Monmouth Cty. Corr. Inst. Inmates v.

Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  Moreover, a prison doctor's use of a treatment

regimen different than that prescribed by a private physician does not necessarily amount to

deliberate indifference.  See Johnson v. Cash, 557 F. App'x 102, 104 (3d Cir. 2013) (citing

McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977)).  The question is, therefore, "whether the

defendant has provided the plaintiff with some type of treatment, despite whether it is what

plaintiff wants."  See Jacobs v. Lisiak, Civ. No. 15-00686, 2016 WL 344431, at *4 (M.D. Pa.

Jan. 28, 2016); Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

In the instant case, Plaintiff has not set forth a plausible Eighth or Fourteenth Amendment

claim regarding inadequate medical care at this time.  Plaintiff fails to name the individuals who

allegedly failed to provide adequate medical care to him.  While Plaintiff names Dr. Doe and

Young as Defendants in the above-captioned action, he fails to adequately plead facts regarding

how these individuals demonstrated deliberate indifference to his medical needs.  Without more,

the Court cannot proceed on Plaintiff's Eighth Amendment claims concerning his medical care

as pled.

**B.    Leave to Amend**

Due to the applicable liberal pleading standard, a plaintiff should generally be granted

leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure

allow for amendments to be granted liberally in light of the "principle that the purpose of

pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962).  The Court may deny a motion to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id.  The Court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief may be granted. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, it would be futile to permit Plaintiff leave to amend his claim regarding improperly processed request slips and grievances.  The Court will, however, permit Plaintiff to file an amended complaint against Defendants regarding his remaining claims. Plaintiff is advised that the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The amended complaint should set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each paragraph should be numbered.  It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts that he claims violated his rights.  Mere conclusory allegations will not set forth a cognizable claim.  If Plaintiff fails to file an amended complaint, the above-captioned action will proceed only as to his excessive force and failure to intervene claims against Defendants Danner, Rose, and Doe.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion for leave to proceed in forma pauperis (Doc. No. 5) and partially dismiss his complaint (Doc. No. 1) for failure to state a

claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court

will afford Plaintiff thirty (30) days from the date of the Order accompanying this Memorandum

in which to file an amended complaint, consistent with the Court's discussion herein.  If Plaintiff

fails to file an amended complaint, the above-captioned action will proceed on his excessive

force and failure to intervene claims against Defendants Danner, Doe, and Rose.  An appropriate

Order follows.